UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ADMIRAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>OHIO SECURITY INSURANCE COMPANY, )<br>EMPLOYERS MUTUAL CASUALTY )<br>COMPANY, and M. WEISMAN ROOFING CO., )<br>INC., )<br>)<br>Defendants, )<br>) | C.A. No.: _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**Introduction**

This is a civil action for declaratory relief pursuant to 28 U.S.C. § 2201, in which the plaintiff, Admiral Insurance Company ("Admiral"), petitions this Court for declarations of rights and obligations in connection with insurance policies issued by Ohio Security Insurance Company ("Ohio Security") and Employers Mutual Casualty Company ("EMC").

More specifically, this action arises out of an underlying construction site tort action pending in Rhode Island Superior Court (Providence County), and captioned as *Scott R. LaFleur v. Slater Cotton II LLC, et al.*, Civil Action No. PC2020-05175 (the "*LaFleur Action*"). Admiral is providing its named insureds, Slater Cotton II LLC ("Slater") and Kerry Contracting LLC ("Kerry"), with defenses against the *LaFleur Action*.

The *Lafleur Action* presents potential liability for which Slater and Kerry qualify as additional insureds under a policy issued by Ohio Security to Interior Partition Specialist LLC ("IPS"). The defense and indemnity coverage that Ohio Security's policy affords for Slater and

Kerry is primary to the coverage afforded to them by Admiral's policy, and Admiral seeks declarations to that effect, as well as damages resulting from Ohio Security's failure to pay its insurance obligations.

Additionally, EMC's named insured, M. Weisman Roofing Co., Inc. ("Weisman"), is contractually obligated to indemnify Slater and Kerry for the potential liability that the *LaFleur Action* presents for them. Weisman's contractual indemnification obligations to Slater and Kerry are covered by EMC's policy, and Admiral seeks declarations to that effect, as well as damages resulting from EMC's failure to pay those insurance obligations.

Slater and Kerry also qualify as additional insureds under EMC's policy for the potential liability that the *LaFleur Action* presents for them. The indemnity coverage that EMC's policy affords for Slater and Kerry as additional insureds is primary to the coverage afforded to them by Admiral's policy, and Admiral seeks declarations to that effect, as well as damages resulting from EMC's failure to pay those insurance obligations.

Finally, Weisman was contractually obligated to procure $3,000,000 of umbrella liability coverage for the benefit of Slater and Kerry, both as contractual indemnitees of Weisman, and as additional insureds. Weisman failed to discharge that contractual obligation, and Admiral seeks a declaration to that effect, as well damages resulting from that breach.

## Parties

1. Plaintiff, Admiral, is a Delaware corporation with a principal place of business in Scottsdale, Arizona.

2. Defendant, Ohio Security, is a New Hampshire corporation with a principal place of business in Boston, Massachusetts.

3. Defendant, EMC, is an Iowa corporation with a principal place of business in Des Moines, Iowa.

4. Defendant, Weisman, is a Rhode Island corporation with a principal place of business in Cumberland, Rhode Island.

## Jurisdiction and Venue

5. This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure.

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it concerns a controversy between citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## Facts

### The *LaFleur Action*

8. The plaintiff in the *LaFleur Action*, Scott R. LaFleur ("Mr. LaFleur"), filed his complaint on July 15, 2020.

9. Mr. LaFleur's complaint alleges that on February 26, 2018, Slater owned the Slater Cotton II Mill in Pawtucket, Rhode Island (the "Mill").

10. Mr. LaFleur's complaint alleges that Slater and Kerry entered into a contract with D M Berg Consultants, P.C. ("Berg") to perform analysis and assessment of the Mill roof, including its structural components.

11. Mr. LaFleur's complaint alleges that on January 27, 2018, Slater and Kerry entered a contract with IPS to perform structural roof repairs pursuant to a plan provided by Berg.

3

12. Mr. LaFleur's complaint alleges that on February 15, 2018, Slater and Kerry entered a contract with Weisman to install a new roof for the Mill.

13. Mr. LaFleur's complaint alleges that on February 26, 2018, the roof was unsafe for workers such as Mr. LaFleur, in that it consisted of rotted components and was not properly supported.

14. Mr. LaFleur's complaint alleges that on February 16, 2018, while working, Mr. LaFleur fell through the Mill roof and sustained severe and permanent injuries.

15. Mr. LaFleur's complaint alleges that Slater, Kerry, Berg, and IPS each owed duties of care to Mr. LaFleur, which they breached, resulting in his fall and injuries.

16. Based upon the foregoing allegations, Mr. LaFleur's complaint asserts negligence causes of action against Slater, Kerry, Berg, and IPS.

17. In turn, Slater and Kerry have asserted crossclaims against Berg and IPS for contribution and indemnification.

18. Slater and Kerry have also asserted a third-party complaint against Weisman, Mr. LaFleur's employer at the time of the accident, for indemnification.

**The Kerry/IPS Subcontract**

19. On January 27, 2018, Kerry (as "Contractor") and IPS (as "Subcontractor") entered a "Subcontract for Construction" (the "Kerry/IPS Subcontract") whereby Kerry agreed to "perform certain services and/or provide equipment and certain materials . . . on property Owned by Slater Cotton II LLC . . . [in] Pawtucket RI."

20. The Kerry/IPS Subcontract further identifies the "Scope of Work" as "[c]omplete all structural repair and connections work detailed in . . . plan provided by DM Berg dated 1/17/18."

21. The Kerry/IPS Subcontract further provides:

> **4. Insurance:**
>
> A. Prior to commencement of the Work, Subcontractor shall furnish Contractor with an acceptable insurance certificate from Subcontractor's insurer naming Owner and Contractor as . . . additional insureds . . . .
>
> \* \* \*
>
> Coverage & Limits Required
>
> \* \* \*
>
> **2.** Commercial General Liability Insurance
>
> Name Owner and Contractor as Additional Insured for ongoing and . . . completed operations on a primary/non-contributory basis and without restriction as to privity of contract. Policy must include contractual liability . . . coverage.
>
> Full Contractual Liability, Per Project Aggregate Required
> $2,000,000   General Aggregate
> $2,000,000   Products/Completed Operations Aggregate
> $1,000,000   Each Occurrence, Combined Single Limit
>
> \* \* \*
>
> 4. Commercial Umbrella Liability
> Umbrella Liability should follow . . . form with underlying General Liability with respect to additional insured status and application of per project aggregate limit.
>
> Policy MUST include General Liability . . . as underlying.
> $3,000,000   Each Occurrence
> $3,000,000   Aggregate
>
> \* \* \*
>
> **6. Indemnification:**
>
> A. Subcontractor shall indemnify and hold harmless Owner and Contractor of any property where Subcontractor's work is performed . . . from all suits or claims of any kind on account of personal injury

5

> . . . arising out of or occurring in connection with Subcontractor's Work . . . but excluding claims arising out of the sole negligence of Contractor

*   *   *

  **8. <u>Laws and Regulations</u>:**

    A. This Agreement shall be governed by the Commonwealth of Massachusetts . . . .

## The Kerry/Weisman Subcontract

22. On February 15, 2018, Kerry (as "Contractor") and Weisman (as "Subcontractor") entered a "Subcontract for Construction" (the "Kerry/Weisman Subcontract"), whereby Weisman agreed to "perform certain services and/or provide equipment and certain materials . . . on property Owned by Slater Cotton II LLC . . . [in] Pawtucket RI."

23. The Kerry/Weisman Subcontract further identifies the "Scope of Work" as "[c]omplete new roof installation on all roofs of the . . . building."

24. The Kerry/Weisman Subcontract also includes "Insurance," "Indemnification," and "Laws and Regulations" provisions identical to those contained in the Kerry/IPS Subcontract.

## The Admiral Policy

25. Admiral issued a policy numbered CA00028795-01 (the "Admiral Policy").

26. The Admiral Policy includes a "Common Policy Declarations" form that identifies Slater and Kerry as the "Named Insureds," and the "Policy Period" as November 6, 2017, to March 6, 2019.

27. The Admiral Policy also includes a "Commercial General Liability Declarations" form that identifies an "Each Occurrence Limit" of $1,000,000.

28. The Admiral Policy includes a "Commercial General Liability Coverage Form" which states:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations . . . . The words "we", "us" and "our" refer to the company providing this insurance.
>
> The word "insured" means any other person or organization qualifying as such under Section **II** – Who Is An Insured.
>
> Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.
>
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
> > a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the . . . duty to defend the insured against any "suit" seeking those damages.
> >
> > \* \* \*
> >
> > **b.** This insurance applies to "bodily injury" . . . only if:
> >
> > > (1) The "bodily injury" . . . is caused by an "occurrence" . . . ; [and]
> > >
> > > **(2)** The "bodily injury" . . . occurs during the policy period . . . .
> >
> > \* \* \*
>
> **2. Exclusions**
>
> This insurance does not apply to:
>
> \* \* \*
>
> > **b. Contractual Liability**
> >
> > > "Bodily injury" . . . for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

7

\* \* \*

 **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" . . . occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" . . . provided:

  **(a)** Liability to such party for, or the cost of, that party's defense has also been assumed in the same "insured contract"; and

  **(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

\* \* \*

 **c.** A limited liability company, you are an insured.

\* \* \*

 **d.** An organization other than a partnership, joint venture or limited liability company, you are an insured.

\* \* \*

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\* \* \*

**2.** **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\* \* \*

 **b.** If a claim is made or a "suit" is brought against any insured, you must:

\* \* \*

  **(2)** Notify us as soon as practicable.

8

    **c.**    You and any other involved insured must:

        **(1)**    Immediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or "suit" . . . .

* * *

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** . . . of this Coverage Part, our obligations are limited as follows:

    **a.**    **Primary Insurance**

        This insurance is primary except when Paragraph **b.** below applies.

* * *

    **b.**    **Excess insurance**

        **(1)**    This insurance is excess over

* * *

            **(b)**    any other primary insurance available to you covering liability for damages arising out of the . . . operations, or the . . . completed operations, for which you have been added as an additional insured.

        **(2)**    When this insurance is excess, we will have no duty under Coverages **A** . . . to defend the insured against any "suit" if any other insurer has a duty to defend the insured against the "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

        **(3)**    When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

            **(a)**    The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

            **(b)**    The total of all deductible and self-insured amounts under all that other insurance.

        **(4)**    We will share the remaining loss, if any, with any other insurance that is not described in the Excess Insurance

9

provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

\* \* \*

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payments we have made under this Coverage Part, those rights are transferred to us.

\* \* \*

**SECTION V – DEFINITIONS**

\* \* \*

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person . . . .

\* \* \*

**9.** "Insured contract" means:

\* \* \*

    **f.** That part of any . . . contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\* \* \*

**13.** "Occurrence" means an accident . . . .

\* \* \*

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury" . . . to which this insurance applies are alleged.

\* \* \*

**22.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

## The Ohio Security Policy

29. Ohio Security issued a policy numbered BLS (18) 56 56 94 12 (the "Ohio Security Policy").

30. The Ohio Security Policy includes a "Commercial General Liability Declarations" form that identifies: (i) IPS as the "Named Insured"; (ii) the "Policy Period" as March 22, 2017, to March 22, 2018; and (iii) an "Each Occurrence Limit" of $1,000,000.

31. The Ohio Security Policy includes a "Commercial General Liability Coverage Form" identical to the one included in the Admiral Policy.

32. The Ohio Security also includes an "Amendment of Insured Contract Definition" endorsement (form CG 24 26 04 13) that provides:

> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
>
> The definition of "insured contract" in the **Definitions** section is replaced by the following:
>
> * * *
>
> **f.**   That part of any . . . contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily injury" . . . to a third person or organization, provided the "bodily injury" . . . is caused, in whole or in part, by you or those acting on your behalf. However, such part of a contract or agreement shall only be considered an "insured contract" to the extent your assumption of the tort liability is permitted by law. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

33. The Ohio Security Policy also includes a "Commercial General Liability Extension" endorsement that provides:

**G. ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT**

1. Paragraph **2.** under **Section II – Who Is An Insured** is amended to include as an insured any . . . organization whom you have agreed to add as an additional insured in a written contract . . . . Such . . . organization is an additional insured but only with respect to liability for "bodily injury" . . . caused in whole or in party by:

    a. Your acts or omissions, or the acts or omission of those acting on your behalf, in the performance of your ongoing operations for the additional insured that are the subject of the written contract . . . provided that the "bodily injury" . . . occurs . . . subsequent to the signing of such written contract . . . .

    \* \* \*

    However:

    1. The insurance afforded to such additional insured only applies to the extent permitted by law; and

    2. If coverage provided to the additional insured is required by a contract . . . the insurance afforded to such additional insured will not be broader than that which you are required by the contract . . . to provide for such additional insured.

    With respect Paragraph **1.a.** above, a[n] . . . organization's status as an additional insured under this endorsement ends when:

    **(1)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

    **(2)** That portion of "your work" out of which the injury or damages arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

    \* \* \*

    The insurance provided by this endorsement applies only if the written contract . . . is signed prior to the "bodily injury" . . . .

    We have no duty to defend the additional insured under this endorsement until we receive written notice of "suit" by the

12

>  additional insured as required in Paragraph **b.** of Condition **2. Duties In the Event Of Occurrence, Offense, Claim Or Suit** under **Section IV- Commercial General Liability Conditions**.
>
> * * *
>
> **H. PRIMARY AND NON-CONTRIBUTORY ADDITIONAL INSURED EXTENSION**
>
> This provision applies to any . . . organization who qualifies as an additional insured under any form or endorsement under this policy.
>
> Condition **4. Other Insurance of SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS** is amended as follows:
>
> **a.** The following is added to Paragraph **a. Primary Insurance**:
> If an additional insured's policy has an Other Insurance provision making its policy excess, and you have agreed in a written contract . . . to provide additional insured coverage on a primary and noncontributory basis, this policy shall be primary and we will not seek contribution from the additional insured's policy for damages we cover.
>
> * * *
>
> **O. BODILY INJURY REDEFINED**
>
> Under **Section V – Definitions**, Definition **3.** Is replaced by the following:
>
> **3.** "Bodily Injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

### The EMC Policy

34. EMC issued a policy numbered 5D3-81-65-18 (the "EMC Policy").

35. The EMC Policy includes a "General Liability Declarations" form that identifies: (i) Weisman as the "Named Insured"; (ii) the "Policy Period" as October 27, 2017, to October 27, 2018; and (iii) an "Each Occurrence Limit" of $1,000,000.

36. The EMC Policy includes a "Commercial General Liability Coverage Form" identical to the one included in the Admiral Policy.

37. The EMC Policy also includes an "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in Construction Contract or Agreement Including Completed Operations – Primary and Noncontributory" endorsement, which provides:

> This endorsement modifies the insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>
> **A. Section II – Who Is An Insured** is amended to include as an additional insured:
>
> **1**. Any . . . organization for whom you are performing operations when you and such . . . organization have agreed in writing in a contract . . . that such . . . organization be added as an additional insured on your policy; and
>
> **2**. Any other . . . organization you are required to add as an additional insured under the contract . . . described in Paragraph **1.** above.
>
> Such . . . organization(s) is an additional insured only with respect to liability for "bodily injury" . . . caused in whole or in part, by:
>
> **a.** Your acts or omissions; or
>
> **b.** The acts or omissions of those acting on your behalf;
>
> in the performance of:
>
> **a.** Your ongoing operations for the additional insured . . . .
>
> \* \* \*
>
> **D.** The following is added to the Other Insurance Condition and supersedes any provision to the contrary:
>
> **Primary and Noncontributory Insurance**
>
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> **(1)** The additional insured is a Named Insured under such other insurance; and
>
> **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

## Count I
### (Declarations of Ohio Security's Duties to Defend Slater and Kerry as Additional Insureds)

38. Admiral incorporates by reference the foregoing paragraphs 1 through 37 as if fully set forth herein.

39. Actual controversies exist as to whether the allegations of the *LaFleur Action* suffice to trigger duties for Ohio Casualty to defend Slater and Kerry as additional insureds under the Ohio Security Policy, and if so, whether such coverage applies on a primary and noncontributory basis relative to coverage for Slater and Kerry under the Admiral Policy.

40. As such, Admiral seeks declarations: (i) that the allegations of the *LaFleur Action* suffice to trigger duties for Ohio Casualty to defend Slater and Kerry as additional insureds under the Ohio Casualty Policy; (ii) that such coverage applies on a primary and noncontributory basis relative to coverage for Slater and Kerry under the Admiral Policy; (iii) that Ohio Casualty may not seek contribution from Admiral; and (iv) that Ohio Casualty must reimburse Admiral for all costs paid in defending Slater and Kerry against the *LaFleur Action*.

## Count II
### (Damages Resulting from Ohio Security's Failure to Defend Slater and Kerry)

41. Admiral incorporates by reference the foregoing paragraphs 1 through 40 as if fully set forth herein.

42. By failing to defend Slater and Kerry as additional insureds, Ohio Casualty has breached its obligations to them under the Ohio Casualty Policy,

43. Admiral, an intended beneficiary of the coverage obligations owing from Ohio Casualty to Slater and Kerry, and transferee and equitable subrogee of Slater's and Kerry's

rights, seeks an award of compensatory damages for Ohio Casualty's breach of its defense obligations.

### Count III
### (Declarations of Ohio Security's Duties to Indemnify
### Slater and Kerry as Additional Insureds)

44. Admiral incorporates by reference the foregoing paragraphs 1 through 43 as if fully set forth herein.

45. Actual controversies exist as to whether Ohio Casualty must indemnify Slater and Kerry as additional insureds for the potential liabilities that the *LaFleur Action* present for them, and if so, whether such coverage applies on a primary and noncontributory basis relative to coverage for Slater and Kerry under the Admiral Policy.

46. As such, Admiral seeks declarations: (i) that Ohio Casualty must indemnify Slater and Kerry as additional insureds for the potential liabilities that the *LaFleur Action* presents for them; (ii) that such indemnity coverage applies on a primary and noncontributory basis relative to indemnity coverage for Slater and Kerry under the Admiral Policy; (iii) that Ohio Casualty may not seek contribution from Admiral; and (iv) that Ohio Casualty must reimburse Admiral for any indemnity coverage paid on behalf of Slater and Kerry in connection with the *LaFleur Action*.

### Count IV
### (Damages Resulting from Ohio Security's
### Failure to Indemnify Slater and Kerry)

47. Admiral incorporates by reference the foregoing paragraphs 1 through 46 as if fully set forth herein.

48. By failing to indemnify Slater and Kerry as additional insureds, Ohio Casualty has breached its obligations to them under the Ohio Casualty Policy,

49. Admiral, an intended beneficiary of the coverage obligations owing from Ohio Casualty to Slater and Kerry, and transferee and equitable subrogee of Slater's and Kerry's rights, seeks an award of compensatory damages for Ohio Casualty's breach of its indemnity obligations under the Ohio Casualty Policy.

### Count V
### (Declaration of EMC's Duty to Indemnify Weisman's Contractual Indemnification Obligations)

50. Admiral incorporates by reference the foregoing paragraphs 1 through 49 as if fully set forth herein.

51. Actual controversies exist as to whether EMC must indemnify Weisman for the contractual indemnification that Weisman owes to Slater and Kerry for the potential liabilities that the *LaFleur Action* presents for Slater and Kerry.

52. As such, Admiral seeks a declaration that EMC must indemnify Weisman for the contractual indemnification that Weisman owes to Slater and Kerry for the potential liabilities that the *LaFleur Action* presents for Slater and Kerry.

### Count VI
### (Damages Resulting from EMC's Failure to Indemnify Weisman's Contractual Indemnification Obligations)

53. Admiral incorporates by reference the foregoing paragraphs 1 through 52 as if fully set forth herein.

54. By failing to indemnify Weisman for the contractual indemnification that Weisman owes to Slater and Kerry for the potential liabilities that the *LaFleur Action* presents, EMC has breached its obligations under the EMC Policy.

55. Admiral, an intended beneficiary of the coverage obligations owing from Ohio Casualty's named insured, EMC, to Admiral's named insureds, Slater and Kerry, and transferee

and equitable subrogee of Slater's and Kerry's right, seeks an award of compensatory damages for Ohio Casualty's breach of its indemnity obligations under the Ohio Casualty Policy.

### Count VII
### (Declaration of Weisman's Insurance Procurement Obligations)

56.    Admiral incorporates by reference the foregoing paragraphs 1 through 55 as if fully set forth herein.

57.    An actual controversy exists as to whether Weisman was contractually obligated to procure $3,000,000 of umbrella liability coverage for the benefit of Slater and Kerry, both as contractual indemnitees of Weisman, and as additional insureds.

58.    As such, Admiral seeks a declaration that Weisman was contractually obligated to procure $3,000,000 of umbrella liability coverage for the benefit of Slater and Kerry, both as contractual indemnitees of Weisman, and as additional insureds.

### Count VIII
### (Damages Resulting from Weisman's Failure to Procure Required Insurance)

59.    Admiral incorporates by reference the foregoing paragraphs 1 through 58 as if fully set forth herein.

60.    By failing to procure $3,000,000 of umbrella liability coverage for the benefit of Slater and Kerry, both as contractual indemnitees of Weisman, and as additional insureds, Weisman has breached its contractual obligations.

61.    Admiral, an intended beneficiary of the insurance procurement obligations owing from Weisman to Slater and Kerry, and transferee and equitable subrogee of Slater's and Kerry's rights, seeks an award of compensatory damages for Weisman's breach of its insurance procurement obligations.

## **Requests for Relief**

**WHEREFORE**, Admiral respectfully requests that this Court:

    (a)    Enter the declarations sought by Counts I, III, V, and VII;

    (b)    Award the amount of proven monetary damages (plus interest thereon) sought by Counts II, IV, VI, and VIII; and

    (c)    Award attorney fees, costs, and such further relief as this Court deems just and proper.

**ADMIRAL REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

Plaintiff,

ADMIRAL INSURANCE COMPANY,

By its attorney,

/s/Timothy J. Morgan
_____
Timothy J. Morgan, Esq. #5365
LAW OFFICE OF TIMOTHY J. MORGAN
57 Maple Ave., Suite 201
Barrington, RI 02806
401.826.3344 Ext. 1
401.566.8989 Fax
Tim@TimothyMorganLaw.com

Dated:  March 11, 2024